UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

      Plaintiff,

v.

APPROXIMATELY $2,821,362.96 IN U.S. CURRENCY SEIZED FROM ACCOUNT NO. 2060203128 AT WELLS FARGO BANK, N.A. IN THE NAME ST. JUDE MEDICAL EQUIPMENT CORP., AND

APPROXIMATELY $1,420,036.33 IN U.S. CURRENCY SEIZED FROM ACCOUNT NO. 6228104995 AT WELLS FARGO BANK, N.A. IN THE NAME ST. JUDE MEDICAL EQUIPMENT CORP.

      Defendants *In Rem*.

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, the United States of America, by and through its undersigned counsel, alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 981(a)(1)(A) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, to forfeit seized funds, more fully described as (collectively, the "Defendant Assets"):

(i) Approximately[1] $2,821,362.96 in U.S. currency seized from account number 2060203128 at Wells Fargo Bank, N.A. in the name of St. Jude Medical Equipment Corp.; and

(ii) Approximately $1,420,036.33 in U.S. currency seized from account number 6228104995 at Wells Fargo Bank, N.A. in the name of St. Jude Medical Equipment Corp.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Assets. *See* 28 U.S.C. §§ 1345, 1355(b).

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District where the Defendant Assets were brought upon seizure. *See* 28 U.S.C. §§ 1355(b)(1), 1395; 18 U.S.C. § 981(h).

## III. FACTUAL ALLEGATIONS

At all times material to this Action:

### A. The Medicare Program and Durable Medical Equipment

5. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who are 65 years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations.

6. The United States Department of Health and Human Services ("HHS"), through its

---

[1] All dates and amounts referenced in this Verified Complaint are approximate.

agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

7. Individuals who received benefits under Medicare were commonly referred to as "Medicare beneficiaries."

8. Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

9. Medicare was subdivided into multiple program "parts."

10. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME").

11. DME was equipment designed for repeated use and for a medical purpose, such as orthotic devices, wheelchairs, prosthetic limbs, back braces, knee braces, wheelchairs, nebulizers, and oxygen concentrators.

12. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the enrolled provider a Medicare "provider number."

13. A provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

14. Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

15. To receive payment from Medicare, providers, including DME companies, submitted or caused the submission of claims to Medicare, either directly or through a billing

company.

16. A Medicare claim for DME reimbursement was required to set forth, among other things, the name and unique Medicare identification number of the beneficiary, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

17. A claim for DME submitted to Medicare qualified for reimbursement only if the equipment was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

### B. ST. JUDE MEDICAL EQUIPMENT CORP.

18. St. Jude Medical Equipment Corp. (SJME) was an enrolled Medicare provider that purportedly provided DME to Medicare beneficiaries.

19. SJME was a Florida corporation located in Miami, Florida, which is within the Southern District of Florida.

20. SJME's Wells Fargo Bank, N.A. ("Wells Fargo") account number 2060203128 ("account ending in 3128") was opened on or about October 2017, using a residential address in Miami Florida. In or about February 2019, the address for account ending in 3128 was changed to SJME's purported office in Miami, Florida. In or about March 2020, the address for account ending in 3128 was changed to Michel Elier Manso Alea's residential address in Hialeah, Florida.

21. SJME's Wells Fargo account number 6228104995 ("account ending in 4995") was opened on or about May 2020, using SJME's purported office in Miami, Florida.

22. From March 2020, through July 2020, Michel Elier Manso Alea caused SJME to submit false and fraudulent claims to Medicare totaling $14 Million in U.S. currency for DME that

was medically unnecessary and not provided as represented.

23. Alleged beneficiaries of SJME's Medicare claims between March 2020 through July 2020 stated in interviews with law enforcement agents that they did not receive, request, or need any of the DME that was billed for them and had never heard of SJME. Law enforcement interviewed six alleged beneficiaries. SJME billed Medicare for at least 67 individual DME items purportedly provided to Medicare beneficiaries M.F., J.H., and J.R.

24. Alleged providers and alleged referrals for the DME identified in SJME's Medicare claims between March 2020 through in or around July 2020 stated in interviews with law enforcement agents that they had never heard of SJME, and they had not prescribed the DME to the identified beneficiaries. All of these providers stated that the identified Medicare beneficiaries were not their patients. These were the top referring providers of SJME's total billed Medicare claims, with fraudulent claims attributed to them billing more than $1.9 million.

25. On September 3, 2020, Medicare investigators also visited SJME's purported office in Miami, Florida, which they found was closed. There were no signs indicating SJME was an active business.

### C. Defendant Assets

26. From March 6, 2020, through July 31, 2020, as a result of claims for reimbursements, Medicare deposited $5.7 Million in U.S. currency into SJME's account ending in 3128. This $5.7 Million in U.S. currency constituted approximately 99% of the account ending in 3128's total deposits during that time period.

27. Based on an analysis, on July 13, 2020, $2,821,362.96 in U.S. currency on deposit in SJME's account ending in 3128, which was the entire balance of the account at the time, was traceable to Medicare reimbursements.

28. From May 28, 2020, through June 3, 2020, SJME's account ending in 3128 transferred $1.4 Million in funds traceable to Medicare reimbursement to SJME's account ending in 4995.

29. Based on an analysis, on July 13, 2020, $1,420,036.33 in U.S. currency on deposit in SJME's account ending in 4995, which was the entire balance of the account at the time, was traceable to Medicare reimbursements.

### D. Laundering Transfers Involving Defendants Accounts

30. Manso Alea opened additional bank accounts in the Southern District of Florida to receive and transfer those health care fraud funds deposited in SJME's account ending in 3128. The funds were moved from SJME's account ending in 3128 among and between:

   a. SJME's Wells Fargo account number ending in 4995; and

   b. Manso Alea's Wells Fargo personal account number ending in 7878.

31. Bank records detail the transfers of fraudulent proceeds from SJME's account ending in 3128 to SJME's account ending in 4995 for the purpose of concealing the fraud and spending the funds.

| Date | Transfer Amount | Description |
| --- | --- | --- |
| 5/28/2020 | $500,000 | Transfer from account ending in 3128 to account ending in 4995 |
| 5/28/2020 | $900,000 | Transfer from account ending in 3128 to account ending in 4995 |
| 6/3/2020 | $20,000 | Transfer from account ending in 3128 to account ending in 4995 |
| Total | $1,420,000 | |

32. Bank records also detail that between March 2020 and June 2020, SJME's account ending in 3128 transferred approximately $1,385,583 in U.S. currency through checks signed by Manso Alea, to approximately six shell companies and three related individuals. These funds were proceeds of SJME's health care fraud.

33. On June 30, 2020, law enforcement agents served a federal seizure warrant on

Wells Fargo for the balance of the SJME's account ending in 3128 and SJME's account ending in 4995.  *See* Case No. 20-MJ-03062-OAR (S.D. Fla.).

34. Pursuant to that seizure warrant, Wells Fargo remitted $2,821,362.96 in U.S. currency from SJME's account ending in 3128 to the Federal Bureau of Investigation ("FBI").

35. Also pursuant to that seizure warrant, Wells Fargo remitted $1,420,036.33 in U.S. currency from SJME's account ending in 4995 to the FBI.

36. Pursuant to that seizure warrant, in total the FBI seized $4,241,399.29 in U.S. currency (the Defendant Assets).

## IV.  BASIS FOR FORFEITURE

37. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a specified unlawful activity or a conspiracy to commit such offense is subject to civil forfeiture.

38. Pursuant to 18 U.S.C. § 1956(c)(7)(F), any act or activity constituting an offense involving a "Federal health care offense" constitutes a specified unlawful activity.

39. Pursuant to 18 U.S.C. §§ 1347 and 1349, health care fraud and conspiracy to commit health care fraud each is a "Federal health care offense."

40. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

41. Pursuant to 18 U.S.C. § § 1956(a)(1)(B)(i), it is a federal crime to, "knowing that the property involved in a transaction represents the proceeds of some form of unlawful activity, conduct[] or attempt[] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . to conceal or to disguise the nature, the location, the source, the

ownership, or the control of the proceeds of specified unlawful activity."

42. Pursuant to 18 U.S.C. § 1957, it is a federal crime to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."

43. Pursuant to 18 U.S.C. § 1956(h), it is a federal crime to conspire to commit any offense in violation of 18 U.S.C. § 1956 or § 1957.

## FIRST CLAIM
### Proceeds of Health Care Fraud
### 18 U.S.C. § 981(a)(1)(C)

44. The factual allegations in paragraphs 1 through 36 are re-alleged and incorporated by reference as if fully set forth herein.

45. As set forth above, the Defendant Assets are property that constitute or are derived from proceeds traceable to health care fraud in violation of 18 U.S.C. § 1347, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

46. Accordingly, the Defendant Assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM
### Proceeds of Money Laundering Conspiracy
### 18 U.S.C. § 981(a)(1)(A)

47. The factual allegations in paragraphs 1 through 36 are re-alleged and incorporated by reference as if fully set forth herein.

48. As set forth above, the Defendant Assets were involved in transactions or attempted transactions in a conspiracy to commit an offense in violation of 18 U.S.C. § 1956 or § 1957, and/or constitute property traceable to such property.

49. Accordingly, the Defendant Assets are subject to forfeiture to the United States

pursuant to 18 U.S.C. § 981(a)(1)(A).

**WHEREFORE**, Plaintiff, the United States of America, requests that the Clerk of the Court issue a warrant for the arrest *in rem* of the Defendant Assets; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Assets; that the Defendant Assets be forfeited and condemned to the United States of America; and for such other and further relief as may be deemed just, necessary and proper.

Respectfully submitted,

MICHAEL S. DAVIS
ACTING UNITED STATES ATTORNEY

By:   *s/ G. Raemy Charest-Turken*
Gabrielle Raemy Charest-Turken
Assistant United States Attorney
Florida Bar No. 15939
99 N.E. 4th Street, 7th Floor
Miami FL, 33132-2111
Telephone: (305) 961-9365
E-mail: Gabrielle.Charest-Turken@usdoj.gov

9

## VERIFICATION

I, David Strubinger, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the Federal Bureau of Investigation and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement agents, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

Executed on this 17th of January 2025

_____
David Strubinger
Special Agent, Federal Bureau of Investigation